MCC INVESTMENTS, Respondent,

v.

CRYSTAL PROPERTIES, et
al., Appellants.

No. C8-87-562.

Court of Appeals of Minnesota.

Dec. 8, 1987.

Review Denied Feb. 12, 1988.

Marvin A. Liszt, Ince & Liszt, P.A., Minneapolis, for respondent.

John L. Weyland, Thomas F. Coleman, Jensen & Weyland, P.A., Minneapolis, for appellants.

Heard, considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

This case involves a contract for deed wherein respondent MCC Investments agreed to sell appellants Crystal Properties, a partnership composed of Mahendra Nath, Sita Tatini and Pran Wahi, a commercial office building. Crystal Properties attempted to rescind the contract and stopped making payments. MCC then brought suit for specific performance. Crystal Properties counterclaimed for rescission, or in the alternative, for damages. The trial court found that MCC had made false representations to Crystal Properties and that the representations were material to the transaction, but concluded that Crystal Properties was not entitled to rescission because the parties could not be restored to the status quo ante. The trial court granted specific performance and ordered judgment against Crystal Properties for the payments due under the contract for deed. The trial court also ordered judgment against MCC for damages in the amount of the difference between the purchase price and the fair market value of the property.

Both parties moved for a new trial or for amended findings of fact and conclusions of law. The trial court granted MCC's motion for amended findings of fact and conclusions of law by discounting the award granted to Crystal Properties to present value using a discount rate of 4.5% and also by awarding MCC additional payments due under the contract for deed. We reverse and remand.

## FACTS

On August 22, 1984, Crystal Properties and MCC entered into a purchase agreement for the purchase and sale of a commercial office building, which is commonly referred to as the 5700 Building, located on West Broadway in the city of Crystal. The purchase agreement provided for a contingency period, during which Crystal Properties would be permitted to inspect the building and review all financial data pertaining to the building. During this contingency period, Nath was provided with all requested documents, and he and a consultant prepared a rental projection analysis which projected potential income from all spaces in the building for several years beyond their lease term.

In early September, Nath met with MCC's real estate broker and informed him that, based on Nath's review of the leases and the income projection analysis, he did not want to purchase the building on the terms specified in the August 22 purchase agreement. The parties entered into a second purchase agreement for a purchase price of $1,250,000 on September 7, 1984.

Before executing the contract for deed, Nath requested an opportunity to review the lease files and rent rolls for the 5700 Building. MCC provided copies of all existing leases and rent rolls for August through October 1984, as well as a rent roll projection for November 1984 through January 1985. All of the rent rolls and rent roll projections provided by MCC contained, among other things, a representation that a certain tenant known as Milo Architects and Engineers, Inc. was occupying Suites 300 and 318 at a monthly rental of $3,009, and that Milo was current in all of its rent payments.

On November 14, 1984, the parties entered into a contract for deed. At the closing, MCC produced a rent accounting for November. Milo had not yet paid its rent for the month of November, and MCC volunteered to pay one-half of the Milo rent for November. MCC also discussed with appellant Nath that Milo was delinquent in its rent and had been a problem tenant. However, MCC did not disclose that Milo was actually two years in arrears in rent payments, nor did MCC disclose that it had obtained a judgment against Milo for past due rent in the amount of $45,827 on July 3, 1984.

After taking possession of the 5700 Building, Crystal Properties unsuccessfully attempted to collect rent from Milo. Crystal Properties evicted Milo in March of 1985.

Crystal Properties made payments on the contract for deed through July 1985 and

thereafter informed MCC that it was ceasing payments and seeking a rescission of the contract for deed.

## ISSUES

1. Did the trial court properly conclude that MCC had made a fraudulent misrepresentation?

2. Is Crystal Properties entitled to rescission of the contract for deed?

3. Did the trial court err in discounting Crystal Properties' damage award to present value?

## ANALYSIS

Because Crystal Properties' post-trial motion was not timely, this appeal is from the trial court judgment. In *Tonka Tours, Inc. v. Chadima*, 372 N.W.2d 723 (Minn. 1985), the Minnesota Supreme Court stated the standard of review in appeals from a trial court judgment:

> [W]hen the lower court is the trier of fact, its findings on disputed questions are entitled to the same weight as a jury verdict and will not be upset merely because a reviewing court may view the evidence differently. The findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole.

*Id.* at 726 (citations omitted).

1. The elements of fraudulent misrepresentation are as follows:

1. There must be a representation.
2. That representation must be false.
3. It must have to do with a past or present fact.
4. That fact must be material.
5. It must be susceptible of knowledge.
6. The representer must know it to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false.
7. The representer must intend to have the other person induced to act or justified in acting upon it.
8. That person must be so induced to act or so justified in acting.
9. That person's action must be in reliance upon the representation.
10. That person must suffer damage.
11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury.

*Davis v. Re-Trac Manufacturing Corp.*, 276 Minn. 116, 117, 149 N.W.2d 37, 38–39 (1967); *Nave v. Dovolos*, 395 N.W.2d 393, 397 (Minn.Ct.App.1986).

The trial court found that (1) MCC represented on the rent rolls and rent roll projections that Milo was paying rent in the monthly sum of $3,009; (2) the representation was false; (3) the misrepresentation was material to the transaction between the parties; (4) MCC knew that the representation was false; (5) MCC intended to have Crystal Properties rely on the misrepresentation as an inducement to the purchase of the property, and Crystal Properties was so induced; (6) Crystal Properties justifiably relied upon MCC's false representation; and (7) Crystal Properties has been damaged as a result of MCC's false representation.

Proof of these elements is supported by the record. MCC represented on the rent rolls that Milo was current in all of its rent payments. That representation was false. In fact, Milo had been delinquent for more than two years at the time of closing. Nath testified that if he had known that Milo had not paid rent for more than two years, it would have affected his decision to purchase the building, because without Milo's rent payment, Crystal Properties would be unable to make the interest payments on the mortgage.

MCC's property manager testified on cross examination that she had prepared the rent roll that represented Milo had paid its rent, when in fact she knew Milo had not paid its rent. MCC intended to have Crystal Properties rely on the misrepresentation as an inducement to the purchase of the building. Crystal Properties did rely on the representation in determining whether the purchase of the building would be a profitable investment. Crystal Properties was damaged by the misrepresentation, because it was unable to collect rents

from Milo and thus suffered a loss of income.

■ MCC argues that the element of reliance has not been satisfied in that Crystal Properties relied on the economic rent projections prepared by its consultant rather the representation made regarding the status of the existing rents. MCC's argument is based on the fact that, when preparing the rental projection analysis that projected potential income from all spaces in the building for several years beyond their lease term, Crystal Properties was aware that Milo occupied two suites in the building, one on a month-to-month tenancy and the other on a tenancy that expired five and one-half months after the analysis was prepared. Thus, it is argued, Crystal Properties relied on the economic rent analysis rather than MCC's representations in purchasing the building because Crystal Properties could not have realistically relied on the actual rental figures from those short-term leases.

Nath testified that the rental projections regarding the Milo leases were based on the fact that Milo had been a tenant of the 5700 Building since 1978, and on an oral assurance that Milo would be needing more space.

The trial court's finding that Crystal Properties relied on Milo's status as a current, rent-paying tenant is supported by the record and therefore should not be set aside.

■ 2. The trial court found that rescission of the contract for deed was not an appropriate remedy in this case because the parties could not be restored to the status quo ante. Apparently, this conclusion was based on the finding that, in March 1985, the mortgagee of the 5700 Building called the mortgage due as a result of the sale. Pursuant to the contract for deed, it was MCC's obligation to remedy the situation. MCC renegotiated the interest rate from 9% to 12% per annum in order to avoid foreclosure of the mortgage. This adjustment increased MCC's monthly mortgage payment.

A contract is voidable if a party's assent is induced by a fraudulent misrepresentation on which the party is justified in relying. *Carpenter v. Vreeman,* 409 N.W.2d 258, 260–261 (Minn.Ct.App.1987). The general rule is that a party who wishes to rescind an agreement must place the opposite party in status quo. *Cut Price Super Markets v. Kingpin Foods, Inc.,* 256 Minn. 339, 353, 98 N.W.2d 257, 267 (1959). An attempted restoration of the status quo is an essential part of rescission of a contract. *Id.*

> That a party seeking rescission of a contract must return, or offer to return, *what he has received under it,* and thus put the other party as nearly as is possible in his situation before the contract, is the law. *But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required.*

*Beck v. Spindler,* 256 Minn. 565, 566, 99 N.W.2d 684, 685 (1959) (quoting *Proper v. Proper,* 183 Minn. 481, 484, 237 N.W. 178, 179 (1931)) (emphasis added).

Crystal Properties is able to restore to MCC all that it received under the contract for deed. It can restore possession of the building and fee title exactly as MCC held it prior to the transaction, as there are no additional liens or encumbrances. Crystal Properties can also restore all rental income and damage deposits which it has received since acquiring the building. Therefore, the fact that MCC has incurred higher mortgage payments by reason of the renegotiation of the mortgage due to the sale of the building does not prevent the parties from being restored as nearly as possible to the status quo ante. MCC cannot complain of the impossibility of restoring the status quo ante when that condition is the result of its own wrong. *Spindler,* 256 Minn. at 566, 99 N.W.2d at 685.

■ MCC argues that Crystal Properties ratified the contract by continuing to make payments on the contract for deed after discovering that Milo was delinquent in its rent payments, and thereby waived its

right to rescind the contract. Any act of ratification of the contract, after knowledge of the facts authorizing a rescission, amounts to an affirmance and terminates the right to rescind. *Beck v. Northwestern Federal Savings & Loan Association,* 206 Minn. 125, 131–32, 288 N.W. 217, 220 (1939).

The record does not support a finding of waiver. Crystal Properties did not become fully aware of the fraudulent misrepresentation made by MCC until the discovery phase of this lawsuit. Any act of ratification done before knowledge of the facts authorizing a rescission does not terminate the right to rescind. *Beck,* 206 Minn. at 131–32, 288 N.W. at 220.

3. Because we find that Crystal Properties is entitled to rescission rather than damages, we do not reach the issue of whether the trial court erred in discounting Crystal Properties' damage award to present value.

## DECISION

We reverse the trial court's conclusion that rescission is not appropriate in this case. The parties can be restored as nearly as possible to the status quo, and Crystal Properties has not waived the right to rescind the contract. We also remand to the trial court for an accounting and direct the court to distribute MCC's burden of increased mortgage payments equitably between the parties.

Reversed and remanded.