**DEUTZ–ALLIS CREDIT CORPORATION,**
**Respondent,**

v.

**Kenneth JENSEN, Appellant.**

**No. C8–90–85.**

Court of Appeals of Minnesota.

July 24, 1990.

Hans K. Carlson, Muir, Costello & Carlson, Jackson, for respondent.

James Brian O'Leary, O'Leary & Moritz, Ch., Springfield, for appellant.

Considered and decided by WOZNIAK, C.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

Kenneth Jensen appeals from summary judgment awarding respondent Deutz–Allis Credit Corporation the difference between the sale proceeds of repossessed farm equipment and the amount Jensen owed under a breached lease agreement. Jensen claims that the repossession should have been mediated pursuant to statute and that the equipment was not sold in a commercially reasonable fashion. We affirm in part but reverse and remand for determination of whether Deutz–Allis met the duty to mitigate damages in selling the repossessed equipment.

## FACTS

Jensen and Duetz–Allis Credit Corporation entered into a written agreement for the lease of a combine on December 30, 1985. As part of the agreement, the lease was assigned to Duetz–Allis.

The five-year agreement provided for a downpayment of $556.65 plus tax and five annual payments of approximately $13,-362.96 plus tax. Pursuant to an addendum to the agreement, Jensen also gave a security deposit of $12,400. The addendum stated that the cost of the combine leased thereunder was $62,000 and gave Jensen the option to purchase the combine at the expiration of the lease term for $9,216.50. The price of the purchase option was the estimated fair market value of the equipment at the end of the lease and was not less than 10 percent of the stated equipment cost. Sections 2 and 3 of the remedies clause of the contract provided that in the event of default by Jensen, Deutz–Allis could either sell the goods and collect the deficiency plus liquidated damages, or re-

lease the goods and collect the deficiency plus liquidated damages.

Jensen defaulted on the lease and Deutz–Allis brought an action to repossess and sell the combine and to collect any deficiency plus attorney fees and expenses. The security deposit of $12,400 was forfeited as liquidated damages. On July 12, 1988, the trial court issued an order authorizing the seizure and sale of the combine.

Deutz–Allis repossessed the combine and distributed a brochure advertising it for sale to all Duetz–Allis dealers west of the Mississippi River. On October 12, 1988, the trial court denied a motion for reconsideration brought by Jensen, concluding that the Farmer–Lender Mediation Act and the Minnesota Farm Omnibus bill, Minn.Stat. § 583.23, did not apply to the debt. Accordingly, the court concluded that no mediation period was required regarding Deutz–Allis' repossession request. In November 1988 Deutz–Allis prepared a second brochure advertising the combine along with other equipment available for sale. On March 30, 1989, an implement dealer in Rock Valley, Iowa, purchased the combine from Deutz–Allis for $27,000. This was less than the $49,000 fair market value of the combine found by the trial court in its July 12, 1988, order.

On July 18, 1989, Deutz–Allis brought a motion for summary judgment seeking the difference between the sale price and Jensen's debt under the lease plus attorney fees and costs. Jensen brought opposition motions claiming the repossession should have been mediated, seeking damages because the combine was seized during his harvest season, and also asserting that the lease was in fact a sale and security agreement. Jensen further claimed the law of secured transactions required that the sale following the repossession be commercially reasonable.

On October 25, 1989, the trial court granted Deutz–Allis' motion for summary judgment, awarding a $20,959.52 deficiency, based on the affidavit of Deutz–Allis' counsel indicating Jensen's total indebtedness under the lease agreement and his total credits. In an accompanying memorandum the trial court found there was no issue of material fact to be determined and repeated its conclusion that the Farmer–Lender Mediation Act was not applicable.

## ISSUES

1. Did the trial court err in concluding that the Farmer–Lender Mediation Act is inapplicable?

2. Did the trial court err in concluding that no genuine issue of material fact existed regarding the "commercial reasonableness" of the sale of the combine?

## DISCUSSION

1. On appeal from a summary judgment, this court must determine whether there are any genuine issues of material fact to be determined and whether the trial court erred in its application of the law. *Offerdahl v. University of Minnesota,* 426 N.W.2d 425, 427 (Minn.1988).

Jensen's first claim is resolved by the plain language of Minn.Stat. § 583.22, subd. 2 (1988). He claims that mandatory mediation proceedings were necessary before Deutz–Allis could repossess the combine. The Farmer–Lender Mediation Act mandates such proceedings to enforce a debt against "agricultural property." Minn.Stat. § 583.26, subd. 1 (1988). "Agricultural property" does not include

*property that is leased to the debtor* other than removable agricultural structures under lease with option to purchase * * *.

Minn.Stat. § 583.22, subd. 2 (emphasis added). As the property here was clearly leased to Jensen and is not a "removable agricultural structure," mediation proceedings were not mandated. We conclude that Jensen possessed the combine under a true lease. Jensen cites no law indicating that farm equipment in a farmer's possession under a true lease is subject to mediation proceedings.

2. The trial court did not expressly conclude, as we do here, that the instant agreement was a true lease. However, it did conclude there was no issue of material fact as to the commercial reasonableness of

the sale. This conclusion was apparently based on the ample evidence that the agreement was a lease and not a sale and security agreement as Jensen argued. We affirm the trial court's apparent conclusion that no security interest is involved here. Thus, Article 9 of the Uniform Commercial Code (UCC) and Minn.Stat. § 336.9–504(3) (1988) are not applicable.

If the lease were, in effect, a security agreement, Article 9 of the UCC would apply and the sale of the combine would not pass muster unless commercially reasonable.

> An option given to the lessee to purchase the leased property for a *nominal consideration* does make the lease one intended for security.

*James Talcott, Inc. v. Franklin National Bank of Minneapolis,* 292 Minn. 277, 283, 194 N.W.2d 775, 780 (1972) (emphasis added); *see also Chemlease Worldwide, Inc. v. Brace, Inc.,* 338 N.W.2d 428, 432–33 (Minn. 1983). However, Jensen presents no claim that the consideration in the purchase option is nominal.

Minn.Stat. § 336.1–201(37) (1988) is clearly inapplicable. Jensen, in answering Deutz–Allis' complaint, admitted that he had entered into an equipment lease and was in default. He cannot claim that the option to purchase the combine for an amount in excess of $9,000 is "nominal consideration." He presents no facts to indicate that the agreement here is anything other than a lease. *See Mashlan v. E.M. Trucks, Inc.,* 443 N.W.2d 226, 228 (Minn.App.1989), *pet. for rev. denied* (Minn. Sept. 15, 1989). This lease language is similar to that which led the court in *Mashlan* to hold that a true lease existed. *See id.* at 227. The purchase option price was for the estimated fair market value of the combine at the end of the lease term and was clearly not nominal consideration.

■ Although Jensen did not successfully invoke the UCC, the analysis of the commercial reasonableness of the sale does not end there. It is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages. *Wavra v. Karr,* 142 Minn. 248, 251, 172 N.W. 118, 120 (1919); *Nelson v. Smith,* 349 N.W.2d 849, 854 (Minn.App.1984), *pet. for rev. denied* (Minn. July 26, 1984). Although Deutz–Allis suffered injury by way of Jensen's default and breach of the lease agreement, there is a genuine issue of material fact as to whether Deutz–Allis used reasonable diligence and good efforts to minimize its losses on the resale of the combine. *See id.* The affidavit of Deutz–Allis appears to be conclusory regarding mitigation and commercial reasonableness and is signed by only the attorney, not by someone with personal knowledge as required by Minn.R. Civ.P. 56.05.

Deutz–Allis received little more than half what the trial court found to be the fair market value of the combine. This fact, the restricted scope of the advertising, and the season in which the combine was sold should have been considered by the trial court in determining whether trial was required. We conclude that a genuine and material issue relating to Deutz–Allis' efforts to mitigate damages remains to be resolved at trial.

Although there is no secured transaction involved, the UCC's concept of commercial reasonableness is, to an extent, borrowed from common law doctrines of mitigation of damages and the rule of avoidable consequences. Thus, although the UCC may not be directly controlling, it may be helpful in determining mitigation of damages issues. "What must be done in this respect will depend on the facts of the particular case. The rule exacts nothing unfair or unreasonable." *Wavra,* 142 Minn. at 251, 172 N.W. at 120.

We note that the unpaid balance from the lease included unpaid rent and the "residual value" of the combine. Inclusion of the residual value seems inappropriate, as it appears to be the purchase option price, the figure the lessee would pay at the end of the lease to buy the machine if he so chose. The trial court should determine if it is appropriate to include this figure in an award of damages.

## DECISION

Affirmed in part, reversed in part and remanded.