COUNTY OF BLUE EARTH,
petitioner, Respondent,

v.

Francis E. WINGEN, et al., Appellants.

No. A03–1957.

Court of Appeals of Minnesota.

Aug. 10, 2004.

John M. Riedy, Jorun Groe Meierding, Maschka, Riedy & Ries, PLLP, Mankato, MN, for appellants.

Arvid L. Wendland, Wendland Timmerman, P.A., Blue Earth, MN; and Ross E. Arneson, Blue Earth County Attorney, Mankato, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; WILLIS, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

On a prior appeal, appellants posted a supersedeas bond and stayed a condemnation order pending the outcome of the appeal. Respondent prevailed and moved for "damages in consequence of the appeal." Minn. R. Civ.App. P. 108.01, subd. 2. The district court awarded damages in excess of the amount of the supersedeas bond. Appellants argue that (1) the district court erred in awarding damages in excess of the amount of the supersedeas bond and (2) the evidence is insufficient to support the amount of damages. By notice of review, respondent also argues that the damage award is not supported by the record. We reverse and remand.

## FACTS

This appeal involves respondent Blue Earth County's two condemnation actions against four acres of property owned by appellants Francis and Mary Wingen. The county brought these actions to obtain grading fill for two highway projects. The first condemnation action sought a temporary-easement (temporary-easement action); the second action sought fee title outright (fee-title action).

The county brought the temporary-easement action in July 2001. Following a hearing on September 12, 2001, the district court ordered the easement. Based on this order, the Wingens brought the first appeal in this matter, challenging the county's authority to obtain the easement. *County of Blue Earth v. Wingen*, Nos. C0–01–1731, C3–02–17, 2002 WL 1839209 (Minn.App. Aug.13, 2002). Pending the outcome of the appeal, the Wingens moved to stay the temporary easement. *See* Minn. R. Civ.App. P. 108.01.

To cover potential damages as a result of the stay, the county requested that ap-

pellants file a supersedeas bond. The county offered a supporting affidavit by its highway engineer, Alan Forsberg, who estimated that damages would exceed $61,000 because of the extra cost to purchase and transport fill. Forsberg maintained that it was not feasible to avoid these costs by suspending the highway projects pending the resolution of the appeal.

On October 22, 2001, the district court granted the stay and ordered appellants to post a supersedeas bond of $5,200. The district court subsequently explained its ruling:

> [The county] ... claimed that the appeal could be expected to damage [it] to the extent of $61,700. At the hearing on the merits of the issues conducted on October 16, 2001, the Court expressed [its] doubts as to the merits of [the Wingens'] position and deferred to [the county's] attorney in regard to the amount of the bond. The Court was assured [by the county] that $5,200 was quite sufficient.

In an attempt to avoid the operation of the stay, the county brought the fee-title action in October 2001. On November 19, 2001, the district court ordered the transfer of fee title. The Wingens appealed this order and again moved for a stay. The district court granted the stay and ordered a supersedeas bond in the amount of $8,302, which the Wingens never posted.

We considered consolidated appeals in these matters and affirmed, holding that the county had sufficient grounds for its condemnation actions. *County of Blue Earth v. Wingen,* Nos. C0–01–1731, C3–02–17, 2002 WL 1839209 at *1–*2 (Minn. App. Aug.13, 2002). The district court subsequently lifted the stay in the temporary-easement action in January 2003 and dismissed the fee-title action in March 2003.

In July 2003, the county moved for damages arising out of the stay in the temporary easement action. Relying on Minn. R. Civ.App. P. 108.01, the county claimed that it was entitled to compensation for expenses incurred as a result of delays caused by the appeal. The county submitted another affidavit by Forsberg, who this time determined that the damages from the delay were approximately $35,600. Forsberg calculated the amount of damages based on the difference between the actual cost of fill for the highway projects and the estimated cost of fill from the temporary easement.

In its order of October 13, 2003, the district court found that appellants were ordered to post supersedeas bonds of $5,200 in the temporary-easement action and $8,225 in the fee-title action. The district court stated:

> [The county] had the opportunity to obtain a more significant bond but failed to do so. If the bond had been set in the appropriate amount, respondents would have been put on direct notice of their liability exposure. They could have either filed the bond or dropped their appeal. Therefore, to impose judgment upon them at this time for virtually [seven] times the value of the temporary easement is inappropriate.
>
> The total amount of the Supersedeas Bonds for the two files should have been $13,425. That is the amount that [the Wingens] should be compelled to pay for [the county's] damages pursuant to Rule 108 "in consequence of the appeal."

The district court did not make any findings as to the nature or amount of damages the county incurred in consequence of the prior appeal. This appeal followed.

## ISSUES

I. Does the district court have authority to award "damages in con-

sequence of the appeal" exceeding the amount of the supersedeas bond?

II. Did the district court err in its determination of damages?

## ANALYSIS

### I.

■ The Wingens first contend that the district court lacked authority to award the county damages in excess of the amount of the supersedeas bond. Conclusions of laws, including the interpretation of a procedural rule, are reviewed de novo. *Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 238 (Minn.2002).

■ Rule 108.01, subdivision 2,[1] governs the award of damages in consequence of the appeal and provides:

If the appeal is from an order, the condition of the bond shall be the payment of the costs of the appeal, the damages sustained by the respondent in consequence of the appeal, and the obedience to and satisfaction of the order or judgment which the appellate court may give if the order or any part of it is affirmed or if the appeal is dismissed.

Minn. R. Civ. P. 108.01, subd. 2. In *O'Leary v. Carefree Living of Am. Inc.*, 655 N.W.2d 639 (Minn.App.2003), we considered the scope and effect of supersedeas bond conditions. *O'Leary* involved a quiet-title action in which appellants obtained a supersedeas bond and kept possession of the property pending appeal. *Id.* at 641. The amount of the supersedeas bond was based on the estimated value of

occupancy for the duration of the appeal. *Id.* But the district court underestimated this duration. *Id.* Not only did appellants enjoy possession for a longer period, but they also transferred rents to third parties and failed to make mortgage payments. *Id.*

The *O'Leary* court recognized that the amount of a supersedeas bond "limits the liability of the surety but not the liability of the principal." *Id.* at 643. It then held that, based on principles of unjust enrichment, respondents were entitled to recover more than the amount of the bond. *Id.* at 644. *O'Leary* also did not foreclose recovery for other reasons such as waste. *Id.* at 644–45.

Applying *O'Leary* to the facts here, the Wingens are fully bound by the bond conditions and are liable for all damages caused by the stay, regardless of the bond amount. *See id.* at 643–44. The bond is a prospective assessment of the anticipated amount of damages caused by the stay, not an actual determination of these damages. *See Eide v. Bierbaum*, 472 N.W.2d 193, 194–95 (Minn.App.1991) (injunction bond).

The Wingens attempt to distinguish *O'Leary* by suggesting that recovery in excess of the bonding amount is only available in cases of unjust enrichment. But *O'Leary* does not foreclose damages under other theories of recovery. *O'Leary*, 655 N.W.2d at 644–45. Furthermore, a basic canon of construction is that words and phrases are construed according to their plain meaning. *See* Minn.Stat. § 645.16 (2002). An appellant is liable for "the damages sustained by the respondent in

1. The county argues in part that the supersedeas bond conditions at issue here are governed by Minn. R. Civ.App. P. 108.01, subd. 5. Subdivision 5 pertains to an appeal from a judgment directing the sale or delivery of a possessory interest in real property. Minn. R. Civ.App. P. 108.01, subd. 5. Because this case involves an easement, which does not confer a possessory interest in real property, subdivision 5 is inapposite. *See Alvin v. Johnson*, 241 Minn. 257, 264, 63 N.W.2d 22, 27 (1954) (stating that easement does not carry with it title to or right of possession of land).

consequence of the appeal" without reference to the theory by which damages are sustained. Minn. R. Civ.App. P. 108.01, subd. 2.

Our analysis is supported by the common law of supersedeas bonds. In *Miller v. Reiter*, for example, a city official who, when compelled to issue a liquor license, stayed a writ of mandamus by supersedeas bond. 155 Minn. 110, 111, 192 N.W. 740, 740 (1923). The Minnesota Supreme Court allowed the bar owner to recover lost profits, calculating the amount of damages without reference to the amount of the bond or the theory of recovery. *Id.* at 113, 192 N.W. at 741.

■ Injunction-bond cases also provide a useful analogy. *Cf. O'Leary*, 655 N.W.2d at 642 (equating law of injunction bonds and supersedeas bonds). When an injunction bars a party's actions, damages are not limited to unjust enrichment by the enjoining party. If a party is enjoined from employment, that party may recover lost salary and benefits. *Hubbard Broad., Inc. v. Loescher*, 291 N.W.2d 216, 219–20 (Minn.1980). If a party is enjoined from business premises, that party may recover lost profits. *Paradata of Minn., Inc. v. Fox*, 356 N.W.2d 852, 855 (Minn.App.1984), *review denied* (Minn. Feb. 6, 1985).

■ The purpose of supersedeas bond conditions is to assure that, pending the outcome of an appeal, the economic risk of the appeal is not borne by the party that prevailed below. Given the breadth of relief ordinarily available in other cases involving supersedeas bonds, the limit on the prevailing party's recovery sought by the Wingens is without legal authority.[2]

## II.

Both parties challenge the factual basis for the district court's determination of damages, asserting that the amount is either excessive or insufficient. A district court's findings of fact are reviewed for clear error and will not be disturbed if they are supported by reasonable evidence. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn.1999).

■ The amount of damages sustained by the prevailing party in consequence of the appeal must be rationally related to the loss suffered by the respondent. *See O'Leary*, 655 N.W.2d at 644. It was error to award damages for lost profits in *Miller*, a supersedeas bond case, without evidence of a business's accounts, inventory, or operating expenses. *Miller*, 155 Minn. at 113, 192 N.W. at 741. In *O'Leary*, the issue was remanded when the district court awarded damages for loss of possession of real property but did not itemize other damages for waste or misuse of rental income. *O'Leary*, 655 N.W.2d at 644–45.

Here, the district court awarded respondent $13,425 in damages. This amount is the sum of the supersedeas bond amounts in the temporary-easement and fee-title actions. We must infer that the district court relied on the county's representations, at the time the bonds were set, that the supersedeas bond amounts were sufficient, notwithstanding the Forsberg affidavits which forecasted greater damages resulting from the stay pending appeal.

The final damages order, however, does not explain how the county was compensated for losses suffered in consequence of the appeal. Nor are there any findings

2. The Wingens also argue that constitutional guarantees of procedural due process prevent recovery in excess of the amount of the supersedeas bond. Because this argument was not presented to or decided by the district court, we decline to consider it here. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

that would help establish a rational relationship between the added expense for the highway project and the amount of the damage award.[3] Because no reasonable evidence supports the outcome here, the damage award is clearly erroneous.

Because both parties also challenge the method by which the district court calculated damages, we also consider the meaning of "damages in consequence of the appeal" under Minn. R. Civ.App. P. 108.01, subd. 2.[4] In accordance with common law doctrine of supersedeas bonds, our analysis of the remedy here is guided by contract principles. *See First State Bank of Mountain Lake v. C.E. Stevens Land Co.*, 123 Minn. 218, 219, 143 N.W. 355, 356 (1913) (noting that supersedeas bond, "if given for a valid consideration, is binding and enforceable according to its terms").

Calculation of consequential damages requires an assessment of the losses a party suffers that are caused by the harm, due to the loss of property or privileges to which the party was otherwise entitled. 1 Dan B. Dobbs, *Law of Remedies* §§ 3.2, 3.3(4) (2d ed.1993). Because the scope of causation is potentially unbridled, conse-

quential damages are subject to several limitations.

The primary limitation on consequential damages is that a party is only liable for damages that, at the time the agreement is reached, are reasonably foreseeable to the parties. *Imdieke v. Blenda–Life, Inc.*, 363 N.W.2d 121, 125 (Minn. App.1985), *review denied* (Minn. Apr. 26, 1985). The harmed party has the burden to demonstrate such damages "with a reasonable degree of certainty and exactness." *Nelson v. Smith*, 349 N.W.2d 849, 854 (Minn.App.1984) (citation omitted), *review denied* (Minn. July 26, 1984); *see also Miller*, 155 Minn. at 113, 192 N.W. at 741 (considering certainty of evidence of lost profits when awarding damages against supersedeas bond). The harmed party also has an obligation to take reasonable measures to mitigate damages. *See Deutz–Allis Credit Corp. v. Jensen*, 458 N.W.2d 163, 166 (Minn.App.1990) (stating that nonbreaching party is duty bound under contract law to "use reasonable diligence to mitigate damages"). Applying these principles to the law of supersedeas bonds, we conclude that consequential damages are those reasonably foreseeable

---

3. The district court's order essentially relies on judicial estoppel. Under this doctrine, once a party makes a representation to a court, that party cannot contradict that representation in subsequent proceedings. *State v. Profit*, 591 N.W.2d 451, 462 (Minn.1999). Minnesota courts have declined to recognize judicial estoppel. *Ill. Farmers Ins. Co. v. Glass Service Co.*, 683 N.W.2d 792, 800 (Minn.2004); *Profit*, 591 N.W.2d at 462. Moreover, in light of our conclusion in *O'Leary* that the amount of a supersedeas bond is not a cap on recoverable damages and the Forsberg affidavits addressing the estimated damages resulting from the stay, the county's representation that the amounts of the supersedeas bonds were sufficient does not warrant the conclusion that the county's request for damages constitutes a contradiction in a subsequent proceeding.

4. Citing *O'Leary*, the county suggests that calculation of "damages in consequence of the appeal" should be guided by principles of restitution. It is doubtful whether *O'Leary* can be construed in this manner. 655 N.W.2d at 645. Moreover, restitution is not a form of damages; it is based on profit received by the adverse party, rather than losses suffered by the harmed party. *See* Dobbs, *supra*, § 3.1. Because Minn. R. Civ.App. P. 108.01, subd. 2, expressly calls for "damages," restitution is not an appropriate remedy here. *Cf. Beck v. Spindler*, 256 Minn. 565, 567, 99 N.W.2d 684, 686 (1959) (holding that restitution was unavailable where property had already been restored to its rightful owner and no profit was received by the adverse party).

by the parties at the time the stay is entered, subject to the prevailing party's duty to mitigate damages.

## DECISION

Under Minn. R. Civ.App. P. 108.01, the district court has authority to award damages in excess of the amount of the supersedeas bond. Because we do not discern a rational relationship between the county's damages and the amount awarded by the district court, the damage award is clearly erroneous. We reverse and remand for a determination of consequential damages in a manner not inconsistent with the principles set forth herein. The decision to reopen the record for this purpose rests within the district court's discretion.

**Reversed and remanded.**

KALITOWSKI, Judge (concurring specially).

I concur with the holding of the majority but I write separately to comment on the county's claim for damages in this case.

I agree that the law allows the district court to award damages in excess of the supersedeas bonds. But importantly, the court is not required to do so. And I share the district court's concern that the county is claiming a damage amount that both greatly exceeds the total of the supersedeas bonds it requested, and is many times the value of the temporary easement.

As stated by the majority, in making its award of damages it is within the district court's discretion to determine both the reasonable foreseeability of the claimed damages and the county's efforts to mitigate its damages.